```
              IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF OHIO
                         EASTERN DIVISION


Frances Wright,                  :

        Plaintiff,               :

    v.                           :    Case No. 2:12-cv-1009

Commissioner of Social           :    JUDGE ALGENON L. MARBLEY
    Security,                         Magistrate Judge Kemp
                                 :
        Defendant.
```

REPORT AND RECOMMENDATION

I. Introduction

Plaintiff, Frances Wright, filed this action seeking review of a decision of the Commissioner of Social Security denying her applications for disability insurance benefits and supplemental security income. Those applications were filed on January 20, 2009 and alleged that plaintiff became disabled on April 1, 2006.

After initial administrative denials of her application, plaintiff was given a videoconference hearing before an Administrative Law Judge on March 4, 2011. In a decision dated March 24, 2011, the ALJ denied benefits. That became the Commissioner's final decision on October 15, 2012, when the Appeals Council denied review.

After plaintiff filed this case, the Commissioner filed the administrative record on March 19, 2013. Plaintiff filed her statement of specific errors on April 16, 2013. The Commissioner filed a response on June 19, 2013. Plaintiff has not filed a reply brief, so the case is now ready to decide.

II. Plaintiff's Testimony at the Administrative Hearing

Plaintiff, who was 49 years old at the time of the administrative hearing and who had obtained her GED, testified as follows. Her testimony appears at pages 48-71 of the

administrative record.

Plaintiff worked for one day in 2007 transporting MRDD clients. She testified that the work was too painful for her to continue. She had otherwise been off work since 2002. She suffered a work-related injury that year for which she received workers' compensation.

Plaintiff said that her primary problem is pain. Her legs hurt and swelled every day, and she also had vertigo. Additionally, she suffered from back pain. All of her pain affected her on a daily basis. Walking and household chores made it worse. She treated her condition with medication, resting in a reclining chair, or using a heating pad. She described painful spasms in her legs between the knee and thigh on the left side and swelling of her left foot. Her symptoms caused her to lie down for an hour or so at least three times a week.

Plaintiff testified that she lived by herself. She was able to do household chores "a little bit at a time." Doing housework at a normal pace caused her to be in severe pain for a week. She also elevated her legs as much as possible due to venous insufficiency. She told the ALJ she was able to shop for groceries three or four times a month and to drive herself to the store.

Plaintiff believed she could walk for twenty to thirty minutes at a time and to stand that long as well. She could sit for thirty minutes to an hour at a time. Because of problems with her left shoulder and her back, she could not lift more than ten pounds. She could reach overhead with her right arm. She did not have any problems with memory or concentration. She also described sporadic but severe episodes of vertigo, which she usually treated successfully with medication, although she would occasionally have to go to the emergency room for treatment.

On a typical day, plaintiff read, did chores, ran errands,

or went to church.  She had been visited by her grandchildren occasionally but not so much recently.  She used a computer and also watched television.  She had to use a walker or a cane in 2004 and 2005, but not since then.  Finally, she testified that every two to three hours she had to sit in her recliner and elevate her legs for half an hour to an hour.

### III.  The Medical Records

The medical records in this case are found beginning on page 293 of the administrative record.  The pertinent records can be summarized as follows.

There is a record from NovaCare Rehabilitation dated September 18, 2008.  It shows diagnoses of neuralgia/neuritis, rotator cuff syndrome, venous insufficiency, lumbago, and general osteoarthritis.  Under "subjective examination," the note indicates that carrying was limited to ten pounds, plaintiff had difficulty reaching overhead, that she could stand between ten and twenty minutes, and that she could walk for twenty minutes to half an hour.  Her chief complaint was pain in the left shoulder, right elbow and legs.  Tightness was noted at various areas and shoulder range of motion was limited.  The therapist noted that plaintiff's prognosis was good and gave her goals for various activities.  (Tr. 408-09).

A handwritten office note from Dr. Lutter's office, containing dates in 2008 and 2009, showed that plaintiff had difficulty in going back to work and had increased swelling in her legs.  She wore compression hose and was diagnosed with chronic venous insufficiency.  (Tr. 419).

Dr. Green, a medical consultant, filled out a residual functional capacity assessment form on March 23, 2009.  She limited plaintiff to lifting at the sedentary level and thought plaintiff could stand and walk at least two hours in a workday and sit for six hours.  She could never climb ropes, ladders or

scaffolds and only occasionally stoop, kneel, crawl or crouch. She was also limited in reaching in all directions, including overhead. The form indicated that Dr. Green had adopted an RFC from a prior ALJ decision. (Tr. 461-68).

Dr. Ratliff, plaintiff's family physician, filled out a functional capacity form on February 18, 2011. He limited her lifting in a similar way and also thought she could stand, walk and sit for only seven hours in a work day. She could rarely engage in various postural activities but could occasionally reach or pull, and had to avoid many workplace hazards, noise being the only exception. He also said she needed to rest in addition to a morning, lunch and afternoon break. He described her pain as moderate. (Tr. 625-26).

### IV. The Vocational Testimony

A vocational expert, Mr. Walker, also testified at the administrative hearing. His testimony begins at page 72 of the record. He noted that according to the file, plaintiff had performed three different jobs in the prior 15 years. She worked as an auto parts delivery person, a van driver, and a driver for an auto delivery company. According to the Dictionary of Occupational Titles, the jobs ranged from light to medium in exertional level (although plaintiff performed one of them at the heavy level) and they are all semi-skilled.

Mr. Walker was asked some questions about a hypothetical person of plaintiff's age and with her educational and vocational background who could perform a limited range of sedentary work, involving lifting five pounds frequently and ten pounds occasionally, could stand for one hour at a time and up to two hours in a work day, could walk for up to two hours at a time but for only three hours total in a work day, who could sit for six hours a day, but for only an hour at a time, and who had these additional restrictions or abilities: being able to perform

unlimited pushing and pulling; being able to stoop, kneel and crouch occasionally; and being able to reach overhead but only occasionally on the left. In response, Mr. Walker said that such a person could not do any of plaintiff's past jobs.

Mr. Walker then testified that restrictions on reaching were very significant, and if a person could reach only occasionally even with the non-dominant hand or arm, that would eliminate about 99% of the sedentary jobs and 96% of the light jobs. The only job he believed someone with such a reaching restriction could do was the job of call-out operator. 220 of those positions existed in Central Ohio. At the state level, there would be 752 such positions, and 14,300 at the national level.

The ALJ then clarified that, according to the hypothetical posed, the person could reach overhead on the left side only occasionally, but could reach below shoulder level frequently. With that clarification, Mr. Walker identified additional jobs such as order clerk and document preparer which such a person could do. Together, there were about 600 of these additional jobs in the local economy, about 2,400 in the state economy, and almost 60,000 at the national level.

Finally, Mr. Walker was asked to assume some additional restrictions on the hypothetical person's ability to climb, balance, stoop, crouch, kneel, reach, push, pull, handle, feel, perform fine and gross manipulation, to be around unprotected heights and dangerous moving machinery, and to be exposed to chemical or irritants. That person also had to take more rest breaks than the usual morning, lunch, and afternoon breaks. In Mr. Walker's opinion, someone that limited could not be employed. The same would be true of a person who had to elevate her legs at least straight out for two hours a day.

      V.   <u>The Administrative Law Judge's Decision</u>

The Administrative Law Judge's decision appears at pages 27

through 34 of the administrative record.  The important findings in that decision are as follows.

The Administrative Law Judge found, first, that plaintiff met the insured requirements for disability benefits through September 30, 2009.  Next, plaintiff had not engaged in substantial gainful activity from her alleged onset date through the date of the decision.  As far as plaintiff's impairments are concerned, the ALJ found that plaintiff had a single severe impairment, venous insufficiency.  The ALJ also found that plaintiff's impairment did not, at any time, meet or equal the requirements of any section of the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1), particularly Listing 4.11.

Moving to the next step of the sequential evaluation process, the ALJ found that plaintiff had the residual functional capacity to perform sedentary work except that she could lift five pounds frequently and ten pounds occasionally, could stand for two out of eight hours, for one hour at a time, could walk for two hours at a time, for a total of three hours in an eight-hour day, could sit for six out of eight hours, sitting one hour at a time, could occasionally stoop, crouch, squat, and reach overhead with the left shoulder, and could not climb ladders or ropes.  The ALJ found that, with these restrictions, plaintiff could not perform her past relevant work but she could do those jobs identified by the vocational expert such as call-out operator, order clerk or document preparer.  Consequently, the ALJ concluded that plaintiff was not entitled either to disability benefits or to SSI.

### VI. Plaintiff's Statement of Specific Errors

In her statement of specific errors, plaintiff presents one issue - lack of substantial evidence for the ALJ's decision - with two subparts: that the ALJ did not consider the medical

evidence as a whole, and that the ALJ did not give appropriate weight to the opinion of the treating physicians, Drs. Ratliff and Lutter.  The Court generally reviews the administrative decision of a Social Security ALJ under this legal standard:

    <u>Standard of Review.</u>  Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary [now the Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'"  <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Company v. NLRB</u>, 305 U.S. 197, 229 (1938)).  It is "'more than a mere scintilla.'" <u>Id</u>.  <u>LeMaster v. Weinberger</u>, 533 F.2d 337, 339 (6th Cir. 1976).  The Commissioner's findings of fact must be based upon the record as a whole.  <u>Harris v. Heckler</u>, 756 F.2d 431, 435 (6th Cir. 1985); <u>Houston v. Secretary</u>, 736 F.2d 365, 366 (6th Cir. 1984); <u>Fraley v. Secretary</u>, 733 F.2d 437, 439-440 (6th Cir. 1984).  In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" <u>Beavers v. Secretary of Health, Education and Welfare</u>, 577 F.2d 383, 387 (6th Cir. 1978) (quoting <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 488 (1951)); <u>Wages v. Secretary of Health and Human Services</u>, 755 F.2d 495, 497 (6th Cir. 1985).  Even if this Court would reach contrary conclusions of fact, the Commissioner's decision must be affirmed so long as that determination is supported by substantial evidence.  <u>Kinsella v. Schweiker</u>, 708 F.2d 1058, 1059 (6th Cir. 1983).

    The Court begins with plaintiff's claim that the ALJ failed to consider the medical record as a whole.  In support of that claim, plaintiff argues that the ALJ did not discuss the physical therapy notes which showed that her residual functional capacity

-7-

was less than that found by the ALJ, and also failed to discuss the office note from Dr. Lutter regarding plaintiff's use of compression stockings and her need to elevate her legs.  She concludes that "[t]he record as a whole proves that Ms. Wright is more restricted in her ability to stand and walk than found by the ALJ and that she needs to elevate her legs.  The ALJ failed to mention Plaintiff's need to elevate her legs at all and failed to credit the evidence which supports a more restrictive ability to stand and walk."  Statement of Errors, Doc. 11, at 8.

The Commissioner responds to this argument by noting first that an ALJ is not required to discuss every piece of evidence in the file.  Additionally, the Commissioner asserts that the physical therapy notes do not, in fact, constitute a medical opinion as to plaintiff's abilities but rather a recitation of plaintiff's own subjective assessment of what she was able to do, so that the ALJ was under no obligation to evaluate them as if they were opinion evidence from a medical source.  Finally, the Commissioner contends that the notation to "elevate" found in Dr. Lutter's note is not a statement of limitation but simply a recommendation and, again, the ALJ was either not required to discuss it, or the failure to do so was harmless error.

It is true, as the Commissioner argues, that the simple failure of an ALJ to discuss every item of evidence in the record is not reversible error *per se*.  See, e.g., Karger v. Comm'r of Social Security, 414 Fed. Appx. 739, 753 (6th Cir. Feb. 10, 2011)("an ALJ is not required to discuss every piece of medical opinion evidence ...").  This rule was well-articulated in Loral Defense Systems-Akron v. NLRB., 200 F.3d 436, 453 (6th Cir. 1999), where the Court of Appeals explained, citing to NLRB v. Beverly Enterprises-Massachusetts, 174 F.3d 13 (1st Cir. 1999), that "the fact that the ALJ's opinion failed to discuss all of the testimony and evidence presented to him does not mean that

-8-

the ALJ 'failed to consider' the evidence."  An ALJ may even resolve conflicts in the evidence implicitly through the findings he or she makes, and that is permissible so long as those findings are supported by the record as a whole.  Id.

This Court has consistently applied the Loral Defense Systems-Akron rule in the social security context.  See, e.g. Williamson v. Commissioner of Social Sec., 2013 WL 394572, *3 (S.D. Ohio Jan. 31, 2013); Wood v. Commissioner of Social Sec., 2010 WL 1253992, *5 (S.D. Ohio Feb. 18, 2010), adopted and affirmed 2010 WL 1253989 (S.D. Ohio March 24, 2010).  However, the rule is not unqualified.  As the Court of Appeals pointed out in Karger, supra, the ALJ must "discuss enough of that evidence to enable [a reviewing court] to determine whether substantial evidence supports the [ALJ's] determination ...."  Further, "[a]n ALJ's failure to consider an entire line of evidence falls below the minimal level of articulation required."  Diaz v. Chater, 55 F.3d 300, 307 (7th Cir. 1995).

Here, the ALJ specifically acknowledged that plaintiff "had severe pain in her legs, ankles and feet due to chronic venous insufficiency, and was prescribed compression hose and medication."  (Tr. 31).  However, the ALJ also noted that she had been treated conservatively and that "multiple diagnostic examinations were consistently negative, and failed to show abnormalities in her lower extremities despite her diagnosis." Id.  The ALJ then recited the results of these tests in detail. Id.  Thus, it is simply not the case that the ALJ ignored an entire line of evidence concerning plaintiff's venous insufficiency, and the ALJ did discuss a sufficient amount of evidence to permit the Court to determine if the evidence adequately supports the ALJ's findings.  The Court defers most of the discussion of Dr. Lutter's "elevate" comment to its analysis of plaintiff's second claimed error, although it is clear from the ALJ's decision that the ALJ implicitly rejected the

contention that plaintiff would have to elevate her legs for a period of time lengthy enough to preclude competitive work, and that is enough to dispel the notion that the ALJ did not adequately review the record as to this issue.  For these reasons, the Court finds no merit in plaintiff's first claim

As to the second issue, it has long been the law in social security disability cases that a treating physician's opinion is entitled to weight substantially greater than that of a nonexamining medical advisor or a physician who saw plaintiff only once.  20 C.F.R. §404.1527(d); see also Lashley v. Secretary of H.H.S., 708 F.2d 1048, 1054 (6th Cir. 1983); Estes v. Harris, 512 F.Supp. 1106, 1113 (S.D. Ohio 1981).  However, in evaluating a treating physician's opinion, the Commissioner may consider the extent to which that physician's own objective findings support or contradict that opinion.  Moon v. Sullivan, 923 F.2d 1175 (6th Cir. 1990); Loy v. Secretary of HHS, 901 F.2d 1306 (6th Cir. 1990).  The Commissioner may also evaluate other objective medical evidence, including the results of tests or examinations performed by non-treating medical sources, and may consider the claimant's activities of daily living.  Cutlip v. Secretary of HHS, 25 F.3d 284 (6th Cir. 1994).  No matter how the issue of the weight to be given to a treating physician's opinion is finally resolved, the ALJ is required to provide a reasoned explanation so that both the claimant and a reviewing Court can determine why the opinion was rejected (if it was) and whether the ALJ considered only appropriate factors in making that decision. Wilson v. Comm'r of Social Security, 378 F.3d 541, 544 (6th Cir. 2004).  Finally, the ALJ cannot simply reject completely and without explanation a treating source opinion which is not given controlling weight; rather, "the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment

relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." Blakley v. Comm'r of Social Security, 581 F.3d 399, 406 (6th Cir. 2009).

It is true that the ALJ did not specifically analyze Dr. Lutter's note as a medical opinion from a treating source. Before turning to that issue, however, the Court examines the way in which the ALJ dealt with Dr. Ratliff's opinion, because the ALJ recognized him as a treating source but did not give his opinion controlling weight.

The ALJ had this to say about Dr. Ratliff:

> Although a treating source, John Ratliff, DO rendered an opinion [] I found it incomplete in that he failed to specify the basis for his conclusions regarding the severity of the claimant's condition. (Exhibit C17F). I gave his opinion little weight in my analysis. I note, however, that even his most recent note setting forth the claimant's limitations, would not be wholly inconsistent with my RFC finding.

Tr. 32. Immediately before the quoted language, the ALJ assigned great weight to the opinion of Dr. Green, explaining that it "was accompanied by a detailed explanation, after a full review of the entirety of the medical evidence" and that "the medical evidence of record substantiates the agency examiner's findings...." Id. The primary difference between Dr. Ratliff's opinion and the ALJ's assessment of plaintiff's residual functional capacity is in the area of sitting; Dr. Ratliff limited plaintiff to 3-4 hours of sitting in a workday, but up to two hours at a time without interruption, whereas the ALJ found plaintiff could sit up to six hours in a workday, but for only one hour at a time. Also, Dr. Ratliff included a need to take more than ordinary work breaks, whereas the ALJ did not.

Plaintiff's only specific criticism of this part of the decision appears to be the claim that the ALJ's "decision to give

-11-

Dr. Ratliff's opinion little weight was also in error since Dr. Ratliff supported his opinion with his treatment notes and the ALJ failed to consider this supporting evidenced when she weighed Dr. Ratliff's opinion...."  Statement of Errors, at 10. Plaintiff cites to Dr. Ratliff's numerous office notes but does not say exactly what, in those notes, supports the views he expressed in his RFC assessment.

There is no question that Dr. Ratliff's notes are somewhat difficult to decipher.  They do, however, as the Commissioner notes, contain a place to describe various symptoms or abnormalities, and his most recent note, dated about the same time as his RFC form, shows that the only place plaintiff had any pain or swelling was in her back, and not her legs, knees, ankles or feet.  (Tr. 620).  Other forms, such as the one found at Tr. 507, show no pain or swelling at all.  Despite plaintiff's testimony that pain in her legs kept her from being able to work, most of the treatment notes in the record are for other complaints, and, as the ALJ correctly noted, there is not a single positive diagnostic test in the record.  A reasonable person could have concluded, as did the ALJ, that even though Dr. Ratliff provided treatment to plaintiff over a period of time and made notes of that treatment, his notes did not support the restrictive RFC in his report.  When that is the case, the ALJ is permitted to give less than controlling weight to a treating source's opinion. <u>See, e.g., Nelson v. Comm'r of Social Security</u>, 195 Fed. Appx. 462, 472 (6th Cir. Aug. 28, 2006)(an ALJ may assign little weight to a treating source opinion where the source "provided little or no elaboration on those opinions, and the treatment records do not show that those opinions are supported by medically acceptable clinical and laboratory diagnostic techniques").

That leaves only the question about Dr. Lutter.  The Commissioner argues strenuously that the single word "elevate"

found in one office note is not a medical opinion from a treating source about limitations caused by plaintiff's condition, or, if it is, that it is simply too vague to be incorporated into an RFC finding because it does not indicate how often or in what manner plaintiff needed to elevate her legs as part of her treatment regimen.  The Court of Appeals has recognized that this type of reasoning is valid.  See, e.g., Coldiron v. Comm'r of Social Security, 391 Fed. Appx. 435 (6th Cir. Aug. 12, 2010); Gaskin v. Comm'r of Social Security, 280 Fed. Appx. 472 (6th Cir. May 30, 2008).  The case cited by the Commissioner, Valentine v. Comm'r of Social Security, 574 F.3d 689, 691 (9th Cir. 2009), also permits an ALJ to draw a distinction between notations made in a medical report that appear to be "recommendations" and a physician's statement that a claimant "is incapable of working *except* under the recommended conditions."

Clearly, Dr. Lutter did not express his meaning with any degree of clarity.  Perhaps a different ALJ might have taken his cryptic note to be a work-related limitation (although even then it would have been extremely difficult to know how to translate it into a need to elevate the legs at any particular level for any particular amount of time).  But that is not the question this Court must address.  Rather, the question is whether this ALJ acted reasonably in choosing not to incorporate any such restriction into the RFC finding.  Given that plaintiff's need to elevate her legs at all is, as the Commissioner points out, noted nowhere else in the record other than plaintiff's testimony at the administrative hearing, the ALJ had a reasonable basis for not including that type of restriction in the RFC finding made.  Therefore, substantial evidence supports that finding.  Because the evidence also supports the finding that someone of plaintiff's age and with her educational and vocational background, and who has the RFC found by the ALJ, can perform some unskilled sedentary work, the ALJ's decision to deny

benefits is also supported by substantial evidence, and it should be affirmed.

## VII.  Recommended Decision

Based on the above discussion, it is recommended that the plaintiff's statement of errors be overruled and that the Court enter judgement in favor of the defendant Commissioner of Social Security.

## VIII.  Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions  of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).


/s/ Terence P. Kemp
United States Magistrate Judge